# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SHERKENYA M. PATTERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-20-969-SM** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Sherkenya M. Patterson (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 16, 18.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, claiming that the administrative law judge's (ALJ) decision lacks substantial supporting evidence and that he failed to properly assess the consistency of Plaintiff's subjective complaints with the medical evidence of record. Doc. 20, at 3. After a careful review of the

administrative record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

## I.    Administrative determination.

### A.    Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.    Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff

---

[1]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 11-12; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)   had not engaged in substantial gainful activity since March 1, 2016, the alleged onset date;

(2)   has the following severe impairments: multiple sclerosis (MS) and obesity;

(3)   has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment;

(4)   has the residual functional capacity[2] (RFC) to perform sedentary work, but is limited to simple, repetitive tasks with only occasional interaction with supervisors or co-workers and cannot interact with the public;

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

3

(5)     has no past relevant work;

(6)     can perform jobs that exist in significant numbers in the national economy, such as document preparer, semi-conductor bonder, touch-up screener; and so,

(7)     was not under disability from March 1, 2016, through April 9, 2020.

*See* AR 12-19. The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

## 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see* AR 1, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion.")
(quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). A
decision is not based on substantial evidence "if it is overwhelmed by other
evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh
the evidence nor substitute [its] judgment for that of the agency." *Newbold v.
Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

**B.    Issues for judicial review.**

Plaintiff's claims are: (1) "[t]he ALJ failed to follow the required legal
standards so his hypothetical question to the [vocational witness], the RFC,
and Step Five findings are not supported by the required substantial evidence";
and (2) "[t]he ALJ failed to properly assess the consistency of [Plaintiff's]
complaints with the evidence of record." Doc. 20, at 3, 13.

**III.   How the ALJ crafted the RFC.**

The ALJ arrived at the RFC assessment after considering Plaintiff's
hearing testimony, her treatment history, the objective medical evidence, and
the nonmedical-source opinion. AR 13-17.

The ALJ explained that the medical evidence of record is inconsistent
with Plaintiff's "statements about the intensity, persistence, and limiting
effects of her symptoms," as well as the adult function report submitted by

Plaintiff's sister. *Id.* at 14-15. During her March 2020 testimony, Plaintiff characterized her vision problems as "blindness" related to MS. *Id.* at 14, 36. On March 16, 2017, Plaintiff complained of "blurred vision." *Id.* at 14, 390. And although at that appointment "[s]he alleged she could not see out of her left eye," she "reported she was caring for her [m]other and raising a [two]-year-old child." *Id.* at 14, 391. The ALJ also pointed out that Plaintiff "successfully completed a handwritten Adult Function Report on November 27, 2018," in which she reported "she could shop in stores, count change, pay bills, watch television, read, and play card games." *Id.* at 14, 273. She follows written instructions "somewhat okay." *Id.* at 14, 274. And treatment notes from January 2019 include a note that Plaintiff "had blurry vision in the right eye for [two] years starting in 2014" which "completely resolved afterward." *Id.* at 14, 423.

Next the ALJ summarized Plaintiff's testimony. Plaintiff testified she was taking Tecfidera, an MS medication, but that she had not recently looked for a job "because she thinks she shakes too much to work." *Id.* at 14, 37. She also stated she "could not do a sit down job due to pain," which she feels "everywhere." *Id.* at 15, 46. She has "weakness in her hands" and has a brace

for one hand. *Id.* at 15, 53. She "falls down whenever she tries to walk" and has "fallen down at least once a day every day this year." *Id.* at 15, 49.

As for Plaintiff's daily activities, she indicated she "frequently drop[s] things" and "d[oes] not prepare meals." *Id.* at 14, 37, 45. "[S]he lost her last job taking care of old people because she was unable to perform the household chores which were required." *Id.* at 14, 37-38. While she has two children, ages two- and five-years old, she has "difficulty buttoning clothes and need[s] help dressing." *Id.* at 14, 39, 45.

The ALJ surveyed the progression of Plaintiff's MS-related complaints and the related objective medical evidence. She received a magnetic resonance imaging (MRI) brain scan in March 2017 due to complaints of headaches and blurred vision. *Id.* at 15. That scan showed patterns attributable to MS. *Id.* Follow-up records in August of that year noted the MS diagnosis and vision problems in Plaintiff's left eye, noting also that her hands shake when she tried to perform a task. *Id.* at 16, 508. "An assessment indicated tingling in the extremities, visual loss in the left eye, and action tremor," and Plaintiff "confirmed these symptoms." *Id.*

Plaintiff presented at the emergency room in August 2017 for abdominal pain and nausea but did not mention MS or related symptoms. *Id.* at 16, 642.

In June 2018 she again presented at the emergency room, this time for drainage from a cesarean section incision; at that time, "[n]o [MS] related symptoms were found" and "she reported no eye problems, no musculoskeletal problems, and no neurological problems." *Id.* at 16, 629.

In December 2018, Plaintiff had "normal range of motion, strength, and tone," though with "slow and clumsy" rapid alternative movements. *Id.* at 16, 421. Her MS was believed to be relapsing and recurring. *Id.* at 16, 425. "[S]he was shown to have mildly slow mental processing and a clumsy right hand with a positive Hoffman's sign," but "[h]er finger to nose coordination was intact bilaterally," and "[s]he maintained a normal casual gait but an unstable tandem gait." *Id.* at 16, 424-25.

In July 2019, Plaintiff reported to the emergency room for a heel injury and "reported no acute musculoskeletal deformities or complaints, no change in level conscious, change in mental status, seizure activity, and no psychiatric or behavioral issues." *Id.* at 16, 566.

The ALJ also considered the adult function report submitted by Plaintiff's sister-in-law but did not find the report persuasive, "as it appears significantly inconsistent with the objective physical examination finding in the claimant's medical record." *Id.* at 16.

Moreover, Ms. Thomason's report appears to focus almost exclusively upon what the claimant is sometimes unable to do, rather than upon what she can consistently do. Ms. Thomason reported the claimant had difficulty writing while at the same time reporting that the claimant had no problems providing her own personal care. She stated the claimant the claimant's "hands shake uncontrollably[."] Whereas her medical records show she had a clumsy right hand and positive Hoffman's sign. A May 2017 physical examination revealed no motor or sensory deficits. It was noted the claimant's neurologic examination was generally nonfocal.

*Id.*

The ALJ also found unpersuasive the state agency physicians' opinions that Plaintiff is "capable of an eroded range of light work." *Id.* at 17. Evidence at the hearing level demonstrated Plaintiff's poor midline balance, "which would clearly support a more significant restriction on standing [and] walking[,] as well as lifting and carrying." *Id.* at 17, 517. The ALJ therefore found the evidence "more reasonably supports a sedentary [RFC] assessment." *Id.* at 17. The ALJ concluded that, given "the combination of [MS] and obesity," Plaintiff is able to occasionally lift or carry ten pounds, frequently lifting or carrying less than ten pounds, standing or walking at least two hours during an eight-hour workday, and sitting for at least six hours in an eight-hour workday. *Id.* This conclusion was based on a December 2018 physical examination revealing Plaintiff had "normal range of motion, strength, and

tone" but that "her rapid alternating movements were slow and clumsy," as well as the ALJ's conclusion that she would "at least occasionally lift and carry" her two-year-old son. *Id.* at 17, 421.

The ALJ was also unpersuaded by the opinion of the state agency psychological consultant, *id.* at 17, and instead found Plaintiff had greater limitations: Plaintiff's "mildly slow mental processing," *id.* at 685, limits her to "performing simple, repetitive tasks with occasional interaction with supervisors or co-workers, but no work with the public," *id.* at 17.

## IV.   Analysis of the ALJ's decision.

### A.   Substantial evidence supports the ALJ's RFC assessment.

Plaintiff first claims a faulty RFC assessment because the ALJ failed to fully account for Plaintiff's manipulative limitations and her balancing, walking, and standing limitations in questioning the vocational witness. Doc. 20, at 4-5. Second, Plaintiff claims the RFC does not accurately reflect Plaintiff's mental limitations because the assigned employment requires more than the "simple, repetitive tasks" the ALJ limited her to. *Id.* at 7.

As a general matter, the "mere presence" of a condition does not prove functional limitations amount to disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). Instead, what matters is "whether the condition

results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016); *Brown v. Chater*, 64 F.3d 669, 1995 WL 490275, at *2 (10th Cir. Aug. 16, 1995) ("The presence of a condition or ailment, without accompanying evidence that the condition results in some functional limitation on the ability to do basic work activity, is insufficient to establish a disability."). Plaintiff points to no evidence to support greater work-related limitations than what the ALJ found, and it was her burden to put such evidence before the ALJ. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (Claimant "has the burden to provide evidence of claimant's functional limitations. . . . unless the ALJ's duty to further develop the record is triggered.").

### 1.    Plaintiff's physical limitations.

Plaintiff claims the ALJ erred by failing to include more stringent workplace limitations to accommodate Plaintiff's "shaking and tremors," as unskilled sedentary jobs typically require good use of both hands and sets of fingers, that is "bilateral manual dexterity." Doc. 20, at 4-5; SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996). However, as the Commissioner points out, Plaintiff does not direct the Court to any medical opinion assessing manual manipulative limitations. Doc. 23, at 5; *see also Qualls v. Astrue*, No. CIV-09-922-M, 2010 WL 4295798, at *6 (W.D. Okla. Sept. 23, 2010) (noting that "[n]o

doctor has placed any exertional or nonexertional limitations on Plaintiff due to . . . MS" and upholding ALJ's RFC determination with exertional limitations only), *adopted*, 2010 WL 4286161 (W.D. Okla. Oct. 22, 2010), *aff'd*, 428 F. App'x 841 (10th Cir. 2011). Indeed, "[t]he mere presence of MS is not determinative; instead, it is whether it causes limitations that prevent Plaintiff from working." *Qualls*, No. CIV-09-922-M, 2010 WL 4295798, at *6.

Plaintiff asserts the ALJ erred by considering Plaintiff's report in August 2017 that her MS-related "action tremor" was "not affecting her ability to function at that time." AR 17, 508 (noting "some shaking in hands – when trying to perform a task – not affecting ability to function at this time"). Plaintiff argues the ALJ's reliance was misplaced because her symptoms had worsened by the time of her hearing and the ALJ's decision, as evidenced by imprecise handwriting, an illegible signature, and completed forms "marred by spastic pen marks in all directions." Doc. 20, at 4. But even though "an inference that [Plaintiff's] coordination had deteriorated more severely might also be supportable," the possibility that the ALJ might have drawn either of two conclusions from the evidence does not mean his conclusion was not supported by substantial evidence. *Barker v. Astrue*, 459 F. App'x 732, 738 (10th Cir. 2012) ("But as we have said, 'the possibility of drawing two

inconsistent conclusions from the evidence does not preclude an administrative agency's findings from being supported by substantial evidence.'" (quoting *Lax*, 489 F.3d at 1084)).

True, the ALJ must evaluate all relevant evidence "to obtain a longitudinal picture" of Plaintiff's functional limitations. *Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)). But that is what the ALJ did here. Along with the August 2017 notation, the ALJ also considered later medical assessments of Plaintiff's shaking. He supported his RFC assessment with a medical report from July 1, 2019, finding only a "clumsy right hand" and positive Hoffman's sign. AR 15, 514. He also noted a July 8, 2019 finding that Plaintiff's "finger to nose coordination was intact bilaterally." *Id.* at 16, 424. The ALJ was "entitled to resolve such evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). The ALJ's RFC assessment is therefore supported by substantial evidence as it relates to Plaintiff's shaking and tremors.

Similarly, Plaintiff notes a February 2019 examination where her gait was found to be "ataxic and unsteady." Doc. 20, at 5; AR 431. However, the ALJ based his decision on several other medical findings related to Plaintiff's gait. *E.g.*, AR 16, 424 (January 8, 2019 finding that Plaintiff had a "[n]ormal casual

gait" but an "unsteady tandem gait"). And the ALJ ultimately rejected the state agency physician's opinion that Plaintiff could perform an eroded range of light work, assigning Plaintiff instead to the less-ambulatory category of sedentary work due to her "combination of multiple sclerosis and obesity." AR 17; *see also* 20 C.F.R. §§ 404.1567, 416.967 (defining sedentary work and light work, which "requires a good deal of walking or standing").[3]

Relatedly, Plaintiff claims the ALJ "did not properly evaluate [her] balancing, walking, and standing limitations." Doc. 20, at 5. The ALJ found Plaintiff "capable of . . . standing and/or walking at least 2 hours in an 8-hour workday, and sitting for at least 6 hours in an 8-hour workday." AR 17. Plaintiff argues medical findings that she had a "normal casual gait" are insufficient to support this conclusion. Doc. 20, at 6-7. The Court disagrees. *See Gray v. Apfel*, 139 F.3d 911 (10th Cir. 1998) (ALJ's conclusion claimant could

---

[3]      Plaintiff argues the ALJ's hypothetical question to the vocational witness did not adequately account for her manipulative limitations because Plaintiff disagrees that she can perform the jobs provided by the expert based on that hypothetical. Doc. 20, at 5. The ALJ did not have to include any manual manipulative limitations that he concluded did not apply to Plaintiff's RFC. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."). And, as explained, the Court finds the ALJ's assessment supported by substantial evidence.

perform sedentary work, which calls for walking up to two hours in a workday, was supported by substantial evidence where ALJ considered, among other medical findings, "that claimant had no joint deformities, had a normal gait and did not need any device to walk.").

Plaintiff also argues the ALJ ignored evidence of Plaintiff's limp and poor balance, objectively supported by spinal cord signal abnormalities, which cause "significant back pain." Doc. 20, at 6. But "[t]he ALJ need only consider the resultant functional limitations arising from [Plaintiff's] conditions, if any, to formulate [the] RFC." *Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (defining RFC). The ALJ noted a December 2018 examination revealing Plaintiff's "normal range of motion, strength, and tone," if "slow and clumsy" "rapid alternating movements." AR 17. The ALJ also noted Plaintiff's attestation to a physician in February 2017 that "[s]he is able to walk a mile and a half." *Id.* at 17, 479.

And the ALJ did not Plaintiff's balance-related limitations. The ALJ referenced Plaintiff's poor midline balance as "clear[ ] support for a more significant restriction on standing walking as well as lifting and carrying" than what the state agency physician had recommended. *Id.* at 17. He also noted a December 2018 examination revealing Plaintiff's "normal range of motion,

strength, and tone," if "slow and clumsy" "rapid alternating movements." AR 17. As with Plaintiff's shaking and tremors, the ALJ was "entitled to resolve such evidentiary conflicts and did so." *Allman*, 813 F.3d at 1333.

Substantial evidence supports the ALJ's RFC assessment.

### 2. Plaintiff's mental limitations.

Plaintiff starts by asserting she cannot perform one of the three jobs "the ALJ assigned to her because" it requires level-three reasoning. Doc. 20, at 7.[4] As the Commissioner points out, Plaintiff's inability to work as a Document Preparer is immaterial because the other two jobs assigned to Plaintiff call for a reasoning level of two, and Plaintiff does not dispute her ability to perform them. *See* DICOT 726.685-066, 1991 WL 679631, "Semiconductor Bonder"; DICOT 726.684-110, 1991 WL 679616, "Touch-Up Screener." The ALJ found 58,000 of those level-two reasoning jobs exist in the national economy, based on the vocational witness's testimony. AR 18, 58-59; *see Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (24,900 jobs nationally is sufficient); *Rogers v. Astrue*, 312 F. App'x 138, 141 (10th Cir. 2009) (11,000 jobs nationally is sufficient). Any error related to the Document Preparer job is harmless.

---

[4]     Plaintiff's initial claims mentioned no mental impairment, and her June 2019 function report mentioned no mental limitations. AR 238, 274.

16

Plaintiff next argues "the ALJ did not properly analyze the medical evidence of record" as to her mental limitations. Doc. 20, at 8. Plaintiff claims the ALJ failed to adequately analyze her ability to understand, remember, and apply information. *Id.* She also claims the ALJ did not adequately analyze Plaintiff's ability to interact with others, so his conclusion that she could work with supervisors and coworkers, but not the public, lacks sufficient support. *Id.* at 9. Finally, Plaintiff argues the ALJ did not assess her ability to adapt or manage herself. *Id.* at 11. The Court disagrees.[5]

The state agency psychological consultant Dr. Lisa Swisher, Ph.D., assessed Plaintiff with "moderate" limitations in all of these areas. AR 101-02, 119-20. Dr. Swisher found Plaintiff able to "understand, recall and perform simple tasks (1-2 steps)"; "focus for two hour periods with routine breaks and pace and persist for [an] 8 hour work day and [a] 40 hour work week despite psychological symptoms"; "interact appropriately with coworkers and supervisors to learn tasks, accept criticism and attend meetings"; and "tolerate

---

[5]      To the extent Plaintiff argues the ALJ erred at step two, where the ALJ determines whether a claimant has a medically severe impairment, *Wall*, 561 F.3d at 1052, any such error was harmless. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

working in presence of the public when frequent conversation or communication is not needed." *Id.* at 108, 126. The ALJ found these recommendations unpersuasive and rejected them. *Id.* at 17. The ALJ instead found Plaintiff's "mildly slow mental processing" further limits her to "performing simple, repetitive tasks with occasional interaction with supervisors or co-workers, but no work with the public." *Id.* at 17, 685.

The Court understands how the ALJ arrived at the stated limitations based on a medical finding of "mildly slow mental processing" and sees no error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

Plaintiff next claims the ALJ did not adequately consider the opinion of Dr. Swisher. Doc. 20, at 11-12. The ALJ expressly acknowledged Dr. Swisher's findings but did not have to adopt any of them. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). In fact, the ALJ found that Plaintiff needed greater restrictions

18

related to interaction with coworkers and supervisors and that she could not work with the public at all. AR 13. The Court finds no error.

Finally, Plaintiff claims the ALJ failed to fairly develop the record because he did not call for a consultative examination. Doc. 20, at 12-13. The ALJ has "broad latitude in ordering a consultative examination." *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). The ALJ may do so "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [the] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). But "if the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)). Plaintiff's counsel made no such request before the ALJ. And although Plaintiff tries to manufacture an inconsistency in the medical evidence, the purported inconsistency is largely attributed to her discredited subjective complaints. *See* Doc. 20, at 12 (listing subjective symptoms Plaintiff would have the ALJ address more expressly). In crafting the RFC, the ALJ narrated the progression of Plaintiff's MS-related symptoms and her subjective complaints, *supra* § III, and the Court is convinced of the sufficiency of the

evidence before him. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) ("Situations that may require a consultative examination.").

Substantial evidence supports the ALJ's assessment of Plaintiff's mental limitations.

### B.   The ALJ properly evaluated the consistency of Plaintiff's testimony with the medical evidence of record.

Plaintiff claims the ALJ failed to properly assess the consistency of Plaintiff's complaints with the evidence of record under Soc. Sec. Rul. 16-3p, arguing that "[b]ecause of his other errors, he could not have properly considered consistency and credibility." Doc. 20, at 13; *see* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court, having found no error above as Plaintiff urges, likewise finds no error in the ALJ's consistency determination.

The ALJ's credibility analysis is otherwise termed the consistency analysis. *See* SSR 16-3p, 2017 WL 5180304, at *2 (explaining use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character."). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Hum. Servs. of U.S.*, 961 F.2d 1495, 1499 (10th Cir. 1992). An "ALJ's credibility findings warrant particular deference" thanks to the ALJ's "institutional advantage": he can "observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated

20

fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). But this requirement is satisfied without "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ considered the Third Party Adult Function Report submitted by Plaintiff's sister-in-law but did not "find this report overly persuasive as it appears significantly inconsistent with the objective [medical evidence]." AR 15, 261-68. The ALJ also found "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 14. The ALJ then detailed the objective medical evidence he found to be inconsistent with Plaintiff's testimony—and why. The Court finds the ALJ's analysis sufficient. *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) ("[T]he ALJ is not required to make specific written findings of credibility . . . if 'the written decision reflects that the ALJ considered the testimony.'") (quoting *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)).

Substantial evidence therefore supports the ALJ's consistency finding.

**V.    Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 18th day of November, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

22